# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

### CIVIL ACTION NO:

| | | |
|---|---|---|
| **SANDRA PINCHBACK,** | § | **PLAINTIFFS' ORIGINAL** |
| **CURTIS GARLAND, SR.,** | § | **COMPLAINT** |
| **MONICA S. WALKER,** | § | |
| **RACHEL CRAWFORD-ANDERSON,** | § | |
| **AS NEXT** | § | |
| **FRIEND OF CURTIS GARLAND, III,** | § | **JURY TRIAL DEMANDED** |
| **A MINOR, AND SANDRA** | § | |
| **PINCHBACK AS THE** | § | **TYLER DIVISION** |
| **PERSONAL REPRESENTATIVE** | § | |
| **OF THE ESTATE OF DECEDENT** | § | |
| **CURTIS** | § | |
| **GARLAND, JR.,** | § | |
| **          PLAINTIFFS** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **OFFICER LEON** | § | |
| **GOMEZ, OFFICER CLARY,** | § | |
| **OFFICER KIMBROUGH** | § | |
| **     (in their Individual Capacities)** | § | |
| | § | |
| **&** | § | |
| **JEFFREY CATOE, WARDEN OF** | § | |
| **BETO UNIT &** | § | |
| **BRAD LIVINGSTON, EXECUTIVE** | § | |
| **DIRECTOR, TDCJ** | § | |
| **          (in their Official Capacities)** | § | |
| | § | |
| **&** | § | |
| **NURSE JONES** | § | |
| **          (in her Official & Individual** | § | |
| **     Capacities)** | § | |
| **&** | § | |
| **TEXAS DEPARTMENT OF CRIMINAL** | § | |
| **JUSTICE** | § | |
| **DEFENDANTS** | § | |

### PLAINTIFFS' COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT**:

## I.      NATURE OF THE CASE & PRELIMINARY STATEMENT

1.   This is a civil action under the Civil Rights Act, Title 42 of the United States Code, Section 1983, seeking damages against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving CURTIS GARLAND, Decedent, of rights secured under the EIGHTH & FOURTEENTH AMENDMENTS of the United States Constitution, with such acts resulting in the wrongful death of Decedent Curtis Garland.

2.   Specifically, this lawsuit alleges that, in the early morning hours of June 24, 2014, Curtis Garland, Jr., an inmate at the Beto Unit of the Texas Department of Corrections in Tennessee Colony, Texas, died a painful death, gasping for air while enduring an asthma attack, because the Defendants ignored medical instructions from the decedent's doctors and treatment providers, ignored pleas for help from Mr. Garland and his fellow inmates, and acted with a cruel, callous, and deliberate indifference to Mr. Garland's serious medical needs, his pain, suffering, and life. The lawsuit further alleges that Mr. Garland suffered and died in this manner because he was being retaliated against because his family had complained about his treatment and care to officials outside of the prison system.

3.   The events leading to Mr. Garland's death began at 12:29 P.M. on June 23, 2014 when Mr. Garland, who suffered from severe asthma, was seen at the medical department of the prison because he was complaining of shortness of breath.  His respirations were labored, he was wheezing, and the saturation level of his oxygen in his blood was 92%, which is below the normal 95% to 100% range.  He was given an albuterol nebulizer treatment, which returned his oxygen saturation level to 96%.  He was then discharged with instructions to return if his condition

2

worsened.  The doctor also ordered for Mr. Garland to receive nebulizer treatments four times daily for three days.

4.  Later that afternoon, Mr. Garland again experienced difficulty breathing and asked to be sent to the infirmary for the nebulizer breathing treatments ordered by the doctor.  Ignoring the instructions from the medical department that Mr. Garland was to be returned if his condition worsened, the individual correctional officer Defendants denied Mr. Garland's request.  Upon seeing how difficult it was for Mr. Garland to breathe, several of his fellow inmates alerted the correctional officer Defendants that Mr. Garland could not breathe and needed to go to the infirmary.  The defendant correctional officers told Mr. Garland's fellow inmates that the infirmary, specifically Defendant Nurse Jones, would not accept Mr. Garland as a patient.  Mr. Garland's fellow inmates continued to plea for the Defendant correction officers to help Mr. Garland.  The Defendants ignored their pleas.   Mr. Garland also continued to whimper, ask the defendant correctional officers for help, telling them that he did not want to die.  He was again ignored. Mr. Garland's suffering lasted eight hours before he finally collapsed and died.

5.  The Defendants' decision to ignore the medical instructions and the pleas from Mr. Garland and his fellow inmates is crueler than appears at first blush in light of other facts known by the Defendants.  In particular, on June 10, 2014, two weeks before his death, Mr. Garland had been rushed to the hospital because he couldn't breathe.  At the hospital, tests revealed that the oxygen saturation level in Mr. Garland's blood was 69%.  The doctors then treated Mr. Garland with two liters of oxygen in order to prevent organ and respiratory failure. Thus, the defendant correctional officers and Nurse Jones refused Mr. Garland treatment on the afternoon and evening of June 23, 2014, despite having clear knowledge that they had barely averted disaster and his

death a mere two weeks before.  Their refusal to treat Mr. Garland and their callous indifference to his pain, his suffering, and his life set forth a clear violation of Mr. Garland's EIGHTH AMENDMENT right to be free of cruel and unusual punishment.

## II.    PARTIES

6.     Decedent, CURTIS GARLAND, JR. (hereinafter referred to as "DECEDENT GARLAND"), was at the time of the incident made the basis of this lawsuit, an individual in the custody of the George Beto Unit of the TDCJ, Tennessee Colony, Texas.

7.     Plaintiff, SANDRA PINCHBACK is, and was at the time of the incident made the basis of this lawsuit, an individual residing in Cedar Hill, Texas. SANDRA PINCHBACK is also the personal representative of the Estate of CURTIS GARLAND, JR..

8.     Plaintiff, CURTIS GARLAND, SR., is, and was at the time of the incident made the basis of this lawsuit, an individual residing in Cedar Hill, TX.

9.     Plaintiff, MONICA S. WALKER is, and was at the time of the incident made the basis of this lawsuit, an individual residing in Dallas, Texas.

10.    Plaintiff, RACHEL CRAWFORD-ANDERSON, AS NEXT FRIEND OF CURTIS GARLAND, III, a minor, is and was at the time of the incident made the basis of this lawsuit, an individual residing in Dallas, TX.

11.    Defendant LEON GOMEZ is an individual employed by Texas Department of Criminal Justice (TDCJ), Beto Unit in Anderson County, Texas.  The acts and omissions complained of herein arise from the conduct of Defendant LEON GOMEZ while he was acting under color of state law, and each act and omission was committed pursuant to his employment and authority as a corrections officer with the TDCJ.  Defendant LEON GOMEZ may be served by delivering a copy of this Complaint at his place of employment.

12.     Defendant CLARY is an individual employed by TDCJ, Beto Unit in Anderson County, Texas.  The acts and omissions complained of herein arise from the conduct of Defendant CLARY while he was acting under color of state law, and each act and omission was committed pursuant to his employment and authority as a corrections officer with the TDCJ.  Defendant CLARY may be served by delivering a copy of this Complaint at his place of employment.

13.     Defendant KIMBROUGH is an individual employed by TDCJ, Beto Unit in Anderson County, Texas.   The acts and omissions complained of herein arise from the conduct of Defendant KIMBROUGH while he was acting under color of state law, and each act and omission was committed pursuant to his employment and authority as a corrections officer with the TDCJ.  Defendant KIMBROUGH may be served by delivering a copy of this Complaint at his place of employment.

14.     Defendant JONES is an individual employed by TDCJ, Beto Unit in Anderson County, Texas.  The acts and omissions complained of herein arise from the conduct of Defendant JONES while she was acting under color of state law, and each act and omission was committed pursuant to her employment and authority as a nurse with the TDCJ.   Upon information and belief, Defendant JONES, has policy-maker and decision-maker authority at the infirmary at TDCJ-Beto Unit. Defendant JONES may be served by delivering a copy of this Complaint at her place of employment.

15.     Defendant BRAD LIVINGSTON is an individual employed as the Executive Director of the Texas Department of Criminal Justice in Huntsville, Texas.   The acts and omissions complained of herein arise from the conduct of Defendant LIVINGSTON while he was acting under color of state law, and each act and omission was committed pursuant to his

employment and authority as Executive Director of the TDCJ.  Upon information and belief, Defendant LIVINGSTON, has policy-maker and decision-maker authority with the TDCJ.

16.     Defendant CATOE is an individual employed by TDCJ, Beto Unit in Anderson County, Texas.  The acts and omissions complained of herein arise from the conduct of Defendant CATOE while he was acting under color of state law, and each act and omission was committed pursuant to his employment and authority as the Warden of the Beto Unit.  Upon information and belief, Defendant CATOE, has policy-maker and decision-maker authority at TDCJ-Beto Unit. Defendant CATOE may be served by delivering a copy of this Complaint at his place of employment.

17.     Defendant TDCJ is a governmental entity located within the State of Texas and may be served by delivering a copy of this Complaint to the Texas Secretary of State.

## III.    JURISDICTION

18.     This action is brought pursuant to 42 U.S.C. § 1983 and the EIGHTH and FOURTEENTH AMENDMENTS to the United States Constitution.  Accordingly, the Court has jurisdiction of this action under 42 U.S.C. §§ 1331 and 1343. This Court similarly, has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 USC 1367, as those claims form part of the same case or controversy under Article III of the United States Constitution.

## IV.    VENUE

19.     Venue is proper in the Eastern District of Texas under 28 U.S.C. § 1391(b)(1) and (2) because the acts, events or omissions giving rise to this claim occurred in Tennessee Colony, Anderson  County, Texas, which falls within the United District Court for the Eastern  District of Texas, Tyler Division.

## VI.    FACTS AND ALLEGATIONS

20.    At all times during the incidents described herein, DECEDENT GARLAND was an inmate in the care, custody, and control of the TDCJ, George Beto Unit, in Tennessee Colony, Texas.

**Defendants Had Notice of the Serious Medical Needs & Consequences Associated With DECEDENT GARLAND'S Asthma**

21.    At the time of his death, DECEDENT GARLAND was a 35 year old black male. He had a past and well-documented medical history of asthma, for which he used a daily Proventil rescue inhaler.

22.    DECEDENT CURTIS GARLAND'S asthmatic condition was known to the George Beto Unit staff, corrections officers, infirmary staff, and nurses, because he had been treated for asthma and other trouble breathing in April 2014, May 2014, and throughout June 2014.

23.    In particular, on June 10, 2014, two weeks before his death, DECEDENT GARLAND reported to the prison medical clinic at 8:10 A.M.   He was wheezing in both upper lobes and his respirations were slightly labored with use of his accessory muscles. His oxygen saturation level when he reported was 95%.   His oxygen saturation level then dropped to 91%. He was treated with a saline nebulizer treatment.   However, his oxygen saturation level dropped further to 90%.   He was then given an albuterol nebulizer treatment, which returned his oxygen saturation level to 96%.   He was then released.

24.    Later that same afternoon of June 10, 2014, at 12:45, DECEDENT GARLAND was brought back to the medical department because he was complaining of not being able to breathe.   His breathing was noted as labored at 40 respirations per minutes.   His lips had turned

blue and his oxygen saturation was 69%, far below the normal range of 95%-100%.  DECEDENT GARLAND was then treated with 2 liters of oxygen via nasal cannula, plus albuterol, and oral prednisone.  This returned his blood oxygen saturation level to 95%.  DECEDENT GARLAND was discharged and was ordered to start albuterol nebulizer treatments three times a day for 10 days.

25.     DECEDENT GARLAND'S June 10, 2014 visit to the prison clinic for severe asthma complications put the Defendants on notice as to the consequences and serious medical risks to his life and health that is associated with DECEDENT GARLAND'S asthma.   Notably, at the 69% oxygen consumption rate DECEDENT GARLAND first presented to the clinic, DECEDENT GARLAND was at serious risk for respiratory failure, organ failure, or death. Further, the June 10th incident also should have demonstrated to the Defendants the importance of returning DECEDENT GARLAND to the medical department when his condition worsens after an earlier treatment.

26.     Unfortunately, the TDCJ and the Individual Defendants did not heed these warnings.

**DECEDENT GARLAND'S Death**

27.     On June 23, 2014, DECEDENT GARLAND went to the prison infirmary/medical department at 12:23 P.M.  He was observed to be suffering from cough and congestion.  He was wheezing, with heavy, loud and labored breathing.  He was also using his respiratory accessory muscles.  This indicated that he was not receiving sufficient oxygen.  His oxygen saturation level was 92%.  DECEDENT GARLAND was then given an albuterol nebulizer treatment. His oxygen saturation level post-treatment was reported at 96%.

8

28.     After being treated, DECEDENT GARLAND was released to the prison security with instructions to return to the medical department if his condition worsened.  Additionally, the doctor also ordered that DECEDENT GARLAND was to receive albuterol nebulizer treatment four times a day for three days.

29.     After he was released, DECEDENT GARLAND continued to have difficulty breathing.  He requested on several occasions to go to the infirmary/medical department for the albuterol nebulizer breathing departments that the doctor had ordered for him. In spite of his medical needs and the doctor's previous orders, DECEDENT GARLAND was told that Defendant Nurse Jones would not accept him as a patient.

30.     At approximately 4:20 P.M. on June 23, 2014, one of DECEDENT GARLAND'S fellow inmates informed Defendant Kimbrough that DECEDENT GARLAND was having difficulty breathing and asked Defendant Kimbrough to bring DECEDENT GARLAND to the infirmary/medical department.   DECEDENT GARLAND was not brought to the infirmary/medical department.

31.     At 6:30 P.M., this same inmate informed Defendant Kimbrough that DECEDENT GARLAND was having difficulty breathing and asked Defendant Kimbrough to bring DECEDENT GARLAND to the infirmary/medical department.  DECEDENT GARLAND was not brought to the infirmary/medical department.

32.     At approximately 9 P.M., another inmate approached DECEDENT GARLAND and saw that he was having difficulty breathing.   DECEDENT GARLAND was also sweating profusely.  DECEDENT GARLAND told the inmate that he was having an asthma attack, needed a breathing treatment, but was not permitted to go to the infirmary/medical department. DECEDENT GARLAND informed this inmate that Defendant Nurse Jones was denying him

9

treatment and admission to the infirmary/medical department.  This inmate asked the Defendant correctional officer GOMEZ to send DECEDENT GARLAND to the infirmary/medical department.  Defendant GOMEZ refused the request.

33.     At approximately 9:45 P.M., DECEDENT GARLAND began asking the other inmates and the correction officers for help, stating that he did not want to die.  Three inmates implored Defendants Gomez and Clary to send DECEDENT GARLAND to the infirmary/medical department.  Defendant Gomez told the inmates that the infirmary/medical department would not accept DECEDENT GARLAND for treatment.

34.     At approximately 10:30 P.M., DECEDENT GARLAND gathered some strength and went underneath a fan near the door of the day room.  He continued to ask the defendant correction officers for help, stating repeatedly that he could not breathe and did not want to die.  His pleas were ignored.

35.     At some point, Defendant Gomez opened the cell to take a closer look at DECEDENT GARLAND.  At that point, DECEDENT GARLAND began to collapse and two of the inmates carried him by the arm out of the cell, and laid him on the floor.  According to several inmates, DECEDENT GARLAND's lips had turned purple.

36.     As DECEDENT GARLAND laid there, Defendant Gomez called the infirmary to request treatment for DECEDENT GARLAND.  As DECEDENT GARLAND lay dying; several of the inmates heard Defendant Nurse Jones initially inform Defendant Gomez that she did not want to see DECEDENT GARLAND in the infirmary/medical department.

37.     At this time, Defendant Gomez informed the infirmary nurses that DECEDENT GARLAND's condition was urgent.   The infirmary/medical department informed Defendant

10

Gomez that they would send a stretcher for DECEDENT GARLAND.  The stretcher eventually arrived fifteen minutes later as DECEDENT GARLAND laid on the ground, gasping for air.

38.     Shortly after that, DECEDENT GARLAND became unresponsive and advanced cardiac life support measures were initiated. DECEDENT GARLAND was transferred to Palestine Regional Medical Center, where he was pronounced dead at 12:42 A.M.

39.     Since DECEDENT GARLAND'S death, numerous inmates housed at the George Beto Unit of the TDCJ, have written letters to DECEDENT GARLAND's family to express their sorrow and outrage regarding DECEDENT GARLAND'S death and the denial of medical treatment and care that resulted in his death. Excerpts of those statements are provided below:

**Derrick Thomas** - On 6-23-14 I came back to M. Wing after working on O-Wing across the hallway. Curtis Wayne Garland #1806971 was in the dayroom when they called 3 row rack up at the time Officer Clary R. c04 was at the dayroom. **I offender Derrick Thomas #1316453 told officer Clary R. c04 that offender Curtis Garland could not breath[e], and that he was sweating real bad. I offender Derrick Thomas #1316453 told wing officer, officer Clary c04 to get offender Curtis Garland some help. Officer Clary R. c04 then stated the[that] he didn't have time to tell CCO Gomez c05 who were[was] working the keys to get offender Curtis Garland some help.** With this mistreatment offender Curtis Garland #1806971 die[d] at 10:50 P.M. outside the M-Wing door. Derrick Thomas #1316453.

**Earl Eugene Smith** - The night that this all happen[ed] inmate Curtis Garland was in the dayroom, shift change officer Clary R told everybody to rack up starting at three row, **offender Curtis Garland made it clear before officer Clary R walked up the stairs to three row that he was having an asthma attack, officer Clary R continued to walk up stairs to three row**, he finished three row and came down stairs and open[ed] dayroom, offender Curtis Garland came out by the fan he was trying to get some air and he was still telling officer Clary R that he needed help, **offender Curtis Garland [said] that [to] officer Clary R before he went upstairs to put two row up, that he felt like he**

**was going to die and he was going to die and he was going to die help me please, officer Clary R went up to two row and put them in the [S] cells and came back down.** By that time **Curtis Garland was looking bad and sweating like he was going to pass out.** Inmate Earl Eugene Smith #1850170 and inmate Marchello Faulkner #1723334 went up to him and grabbed him by each arm, **offender Curtis Garland told Earl Smith that he didn't want to die,** and he was going to use it on himself. I Earl Smith and inmate Marchello Faulkner 17233[3]4 walked Curtis Garland to the gate where officer Gomez was on the keys and he saw his face and knew something was wrong and opened the gate and let me offender Earl Smith #1850170 and Inmate Marchello Falkner # 17233[3]4 walked him outside and that's when he started gasping for air but couldn't get it. I offender Earl Smith #1850170 and inmate Marchello Faulkner #1723334 because they weren't trying to send him to medical. They was telling us to give him his inhaler. **I offender Earl Smith #1850170 started going off on officers on the key, which was officer Gomez telling him that Curtis Garland wasn't breathing and that his lips turn't purple.** Officer Gomez got on his radio calling and telling them that inmate Curtis Garland stopped breathing. Me and inmate Faulkner 1723334 was on the ground with Curtis Garland. Because I offender Earl Smith #1850170 and inmate Faulkner 1723334 started telling officer Gomez from the start that they felt like something was wrong. But if they would have not denied him medical he would be hear [here] still alive. Inmate Curtis Garland died in Inmate Earl Smith #1850170 and Inmate Faulkner #1723334 arm's when they saw that he stop[ped] breathing they made us move. So inmate Earl Smith 1850170 got up and [laid] [his] head on a shirt and they made us move. This [is] when they tried to bring him back to life but he was already dead. **Our friend died in our arms. That's bad when you have to put up a fight just to get officer's to believe you and that's what Earl Smith 1850170 and inmate Faulkner 1723334 did when they saw that Curtis Garland was really sick.** They refuse[d] to rack up just to make sure that their friend get[s] medical attention. **And that's what they did. If they wouldn't have denied him his medical attention Curtis Garland would be hear [here] with us today. Earl Eugene Smith #1850170.**

**Lee Albert Shaw** - **On 6-23-2014 at approximately 4:20 P.M. I Lee Albert Shaw #671903 spoke with officer Kimbrough c05, and told him that offender Curtis Wayne Garland #1806971  couldn't breath[e], and that he was having an asthma attack, and needed to go to the infirmary.** Officer Kimbrough c05 told me offender Lee Albert Shaw #671903 that he got him. **But before I Lee Albert Shaw #671903 left for my 6:30 P.M. lay-in I Lee Albert Shaw #671903 told officer Kimbrough c05 again since he never called the infirmary the first time.** After returning from my lay-in around 9:00 P.M. I Lee Albert Shaw 671903 found that officer Kimbrough c05 still did not call the infirmary. I then asked Curtis if he wanted me Lee Albert Shaw #671903 to call his mom to get them to get on top of this, he told me that the wing officer Sunday c04 was going to get him down there so I Lee Albert Shaw #671903 went to my cell M-128[.] [S]o officer Sunday had lied to me, offender Shaw #671903 because at the shift change offender Curtis Wayne Garland #1806971 was still on 1 row run in front of the fan at 10:30 P.M. Offender Marchello Faulkner #1723334, and offender Earl Smith #1850170 was out ther[e] with him. **Both of these offenders told me that Curtis was telling the officer Cleary R. c04 that he couldn't breathe and that he was going to die please help me, and they both said that officer Cleary R. was telling everyone to rack up [,] these offenders said that Curtis['] legs started to [collapse], and that's when these two offenders Faulkner #1723334 and Smith #1850170 grabbed him by the arm and told officer Gomez c05 that offender Curtis couldn't breathe, he then called the infirmary, and told Nurse Jones that this offender was having an asthma attack Nurse Jones told officer Gomez c05 that she didn't want to see offender Curtis #1806971 that['s] when officer Gomez c05 saw that offender Curtis Garland didn't look good at all but it was to[o] late when he officer Gomez c05 made the choice to open the gate to let offender Curtis Garland #1806971 out because offender Curtis Garland had lost his bowels and bladder before he made it off the wing.** Offender Faulkner #1723334, and smith #1850170 said that he died in their arms at 10:50 P.M. When they found out that Curtis and I Lee Albert Shaw #671903 were family S.G.T Riding came to talk to me he told me that when [he] got down there that Curtis Garland was dead at 10:50P.M.. The other Rank is [lying] trying to cover up their wrong doing

saying he was alive when that is not true. Curtis Wayne Garland #1806971 died for nothing being refused medical treatment.

**Dennis Clemons** - I'm an inmate in the TDCJ system. This is my statement concerning the death of inmate Curtis Garland. On 6-23-14 **on Monday night around about the time of 9:00 P.M.** I had come my Faith Based meeting program, I was sitting behind inmate Curtis Garland watching TV. **I noticed that inmate Curtis Garland having a hard time breathing. I asked inmate Curtis Garland what was wrong. He told me his asthma was flared up and that he needed a breathing treatment. I told inmate Curtis Garland that he needed to get to the infirmary ASAP. He told me that nurse Ms. Jones refused to see and treat him.** So I told Curtis Garland that he needed to remain as still as possible. He gave me a thumbs up. So I went back to watching tv. Around about 9:45 P.M. we was being racked up for the night they called 3 row up first then 2 row. When they called for my row which is 1 row to rack up, inmate Earl Smith and inmate Marchello Faulkner, **and myself noticed inmate Curtis Garland standing in front of the fan standing on his toes trying to breathe**. **We was yelling to c/o Gomez on the keys to get him some help. CO Gomez told us the infirmary would not take him cause they did not want him. Inmate Curtis Garland looked at me and said help me 3x, then he said I'm dying 2x, at this time he was covered in sweat**. So 1 row we refused to rack up so he could get help. **At this time CO Gomez happen to open the door at that opportunity inmate Earl Smith & Marchello Faulkner grabbed inmate Curtis Garland and ran towards the door and at that time Curtis Garland appeared to be passing water. Once they was out the door was the last time I seen Curtis Garland and later learned he passed.** This is my statement that I know and seen

**(emphases added).**

**Decedent Garland Was Being Retaliated Against**

40.     Upon information and belief, DECEDENT GARLAND was being mistreated by the Defendants in retaliation for his family complaining to outside officials regarding DECEDENT GARLAND'S treatment by the prison.

41.     Specifically, in February 2014, DECEDENT GARLAND complained to his mother that he was being denied his rescue inhaler.  DECEDENT GARLAND'S mother, Ms. Sandra Pinchback, informed DECEDENT'S stepfather, Johnnie Pinchback.  Mr. Pinchback then spoke to a staff member for the Innocence Project of Texas.

42.     Upon information and belief, the staff member for the Innocence Project of Texas contacted a state senator.  The state senator and/or his representatives contacted several officials at TDCJ on DECEDENT GARLAND'S behalf.

43.     Thereafter, three prison officials visited DECEDENT GARLAND in early March 2014.  According to DECEDENT GARLAND, one of these officials told him:  "Boy, I don't know who your daddy is. I thought I was the big fish around here but apparently your daddy knows a fish bigger than me.  Next time you have a problem, let me know.  I do not appreciate getting a call and having my butt chewed out for something to do with an inmate."

44.     DECEDENT GARLAND reported this conversation to his sister on March 15, 2014.  According to DECEDENT GARLAND, the tone and tenor of the conversation was unpleasant.  DECEDENT GARLAND told her that he felt threatened by that conversation.

45.     Subsequent to this conversation, DECEDENT GARLAND reported to his family that he was mistreated by the correctional officers and staff on multiple occasions.

46.     Indeed, DECEDENT GARLAND'S death on June 23, 2014 was not the first time DECEDENT GARLAND had been deliberately mistreated by the Defendants during a medical emergency.

47.     During the June 10, 2014 incident where DECEDENT GARLAND almost died, DECEDENT GARLAND reported that he was assaulted in the midst of his asthma attack on June 10, 2014:

> Sg. Smith assaulted me by coming on 3 Row of M-Dorm on 6-10-14. I had a Acute emergency (asthma) attack.  The M-wing witnessed the whole deal.   He then slapped the handcuffs on my wrist were I received a slight bruise on my left wrist with one cut, on the left side. He told me walking down the corridor that "if I move (and I quote), he'll dunk me so bitch don't move."

> Then we got to the door of the infirmary and he slammed me to the wall (brick stains of on my shirt).   Then he took me to the nurses where there were Ms. Gomez, Costello and Ms. Joni Jaster, RN with glasses.   They gave me oxygen and albuterol.

> If I, Mr. Curtis Garland should pass away in my sleep of asthma, Call[Redacted] to Uvonda Garland and let her know that I am with God.   Please call or send them a letter if something should happen to S5KOG #1806971 inmate on 3.16 Top.  God Bless you if you reading this, I'm looking over you.

> Believe in the Lord. He's there when Nobody else is.

> 11 A.M. Tuesday.  Mr. Curtis Wayne Garland 1806971 M-316.

48.      A copy of DECEDENT GARLAND'S note appears below:

Sg Smith Assaulted me by coming on 3 Row of m-doorm on 6-10-14. I had A acute emergency (asthma) attack. The m-wing witnessed the whole deal. He then slapped the handcuffs on my wrist were I received a slight bruise on my left wrist with one cut, on the left side. He told me walking down the corridor that "don't move (and I quote) he'll donk me so best don't move." Then we got to the door of the Infirmary and he slammed me to the wall (bank stains on my shirt. Then he took me to the nurses where there were mr. Gomez Cystic and Ms John CJASTER, RN with glasses They gave me Oxygen and a breating ____.

I AM this  MR. DUBOIS wayne Garland 1806971 m-3.16

of ∦, MR CURTIS Garland should pass away in my sleep of asthma. Call _____ to Uvonda Garland and let her know that I'm with God. Please call or send them a letter of something should _____ to serg # 1806971 inmate m-3.16___ God Bless you & your _____ this in looking over you. Believe in the Lord. He's there when nobody _____ _____

## VI. CAUSES OF ACTION

### CLAIM 1:
### EIGHTH AMENDMENT VIOLATION PURSUANT TO 42 U.S.C. § 1983 AS TO
### INDIVIDUAL DEFENDANTS GOMEZ, CLARY, KIMBROUGH, & JONES

49.     The Plaintiff, Sandra Pinchback, as personal representative of the ESTATE OF DECEDENT GARLAND, brings forth Claim 1 for Violation of the EIGHTH AMENDMENT pursuant to 42 U.S.C. § 1983 against Individual Defendants Correctional Officer Leon Gomez, Correctional Officer Clary, Correctional Officer Kimbrough, and Nurse Jones.   The Plaintiff hereby adopts, incorporates, restates and re-alleges paragraphs 1 through 48, inclusive, with regard to all causes of action.

50.     Individual Defendants, acting under color of law deprived DECEDENT GARLAND of rights and privileges secured to him by the EIGHTH and FOURTEENTH AMENDMENTS to the United States Constitution and by other laws of the United States, by acting with callous and deliberate indifference to DECEDENT GARLAND'S pain, suffering, serious medical needs, and ultimately his life when they denied him access to  necessary and life-saving medical treatment in violation of the United States Constitution and 42 U.S.C. § 1983.

51.     The elements of a cause of action under 42 U.S.C. § 1983 are:

      a.      Plaintiff is deprived of rights under the United States Constitution;

      b.      Such deprivation is caused by a person acting under color of state law;

52.     In order to meet the first prong of the standard, a deprivation of constitutional rights protected by the EIGHTH AMENDMENT, a plaintiff seeking redress for denial of medical benefits, must show that Defendants were deliberately indifferent to his serious medical needs.

53.     DECEDENT GARLAND has shown a deprivation of rights under the EIGHTH AMENDMENT because:

    a.   DECEDENT GARLAND's asthma and difficulty breathing was a serious medical need that placed him at significant risk for substantial bodily injury or death.

    b.   The Individual Defendants, who were each acting under color of the law, were aware of DECEDENT GARLAND'S serious medical need and were deliberate indifferent to these medical needs by failing to render aid to DECEDENT GARLAND on June 23, 2014, prior to his death.

    c.   As a result of Defendant's deliberate indifference to DECEDENT GARLAND'S serious medical needs, DECEDENT GARLAND DIED.

54.     Indeed, each Individual Defendants violated DECEDENT GARLAND'S constitutional rights to be free from cruel and unusual punishment by consciously and deliberately choosing to ignore the medical instructions requiring that DECEDENT GARLAND be brought to the medical department if his condition worsened.  They also ignored the medical instruction requiring that DECEDENT GARLAND receive nebulizer treatments four times that day.  The Individual Defendants also ignored numerous pleas for help from DECEDENT GARLAND and his fellow inmates. Defendants, through these actions, caused DECEDENT GARLAND to suffer an unduly painful, horrifying, and dangerous conditions that resulted in his death.

55.     The individual Defendants ignored these pleas despite being aware that DECEDENT GARLAND had nearly died on June 10, 2014 because of his asthma/breathing problems.  The Individual Defendants therefore violated DECEDENT GARLAND'S EIGHTH AMENDMENT rights to be free of cruel and unusual punishment by deliberately ignoring DECEDENT GARLAND'S serious medical needs.

56.     By violating DECEDENT GARLAND'S EIGHTH AMENDMENT rights, the individual Defendants are liable to DECEDENT GARLAND's estate for all damages, including but not limited to compensatory damages for his pain, suffering, and mental anguish, punitive damages, reasonable attorney's fees, and any other relief he is entitled to by law.

## CLAIM 2:

### EIGHTH AMENDMENT VIOLATION PURSUANT TO 42 U.S.C. § 1983 AS TO DEFENDANTS LIVINGSTON & JONES IN THEIR OFFICIAL CAPACITIES

57.     The Plaintiff, Sandra Pinchback, as personal representative of the ESTATE OF DECEDENT GARLAND, brings forth Claim 2 for Violation of the EIGHTH AMENDMENT pursuant to 42 U.S.C. § 1983 against Defendants Nurse Jones, Jeffrey Catoe, and Brad Livingston, in their official capacities as Nurse, Warden, and Executive Director of the TDCJ, respectively.   The Plaintiff hereby adopts, incorporates, restates and re-alleges paragraphs 1 through 56, inclusive, with regard to all causes of action.

58.     The elements of a cause of action under § 1983 against an individual acting in his or her official capacity, are:

      a.     Plaintiff is deprived of rights under the United States Constitution;

      b.     Such deprivation is caused by a person acting under color of state law;

      c.     The deprivation of Plaintiff's constitutional rights was caused by a custom, or pattern of practice set forth, promulgated, or adopted by the official or government entity or was caused by a policy, custom, or practice enacted by an official having policy-making authority.

59.     In order to meet the first prong of the standard, a deprivation of constitutional rights protected by the EIGHTH AMENDMENT, a plaintiff seeking redress against an individual acting in his official capacity must show that the policy, custom or practice complained of resulted in deliberate indifference to his serious medical needs.

60.    Defendant Nurse Jones & Jeffrey Catoe, acting in their official capacities as Nurse and Warden at the Beto Unit, as policy-makers, at the prison clinic or infirmary violated DECEDENT GARLAND'S EIGHTH AMENDMENT rights by:

      a.    Intentionally and/or deliberately disregarding the safety of DECEDENT GARLAND and other inmates, by failing to maintain the proper procedures and policies required to ensure the health and safety of the inmates in their custody, including policies to provide proper medical care for inmates suffering from life-threatening conditions;

      b.    Intentionally and/or deliberately ignoring the serious medical needs of DECEDENT GARLAND by failing to maintain the proper procedures or policies to ensure that medical instructions to protect the health of inmates are followed by individual nurses and correction officers;

      c.    Intentionally failing to adopt and/or implement a policy and procedure for corrections officers to follow when the infirmary unlawfully denies medical care to an inmate in need of serious medical attention.

61.    Defendants Jeffrey Catoe & Brad Livingston, acting in their official capacities, as Warden of the Beto Unit and Executive Director of TDCJ, respectively, violated DECEDENT GARLAND'S EIGHTH AMENDMENT rights by:

      a.    Failing to properly train, hire, control, discipline and supervise employees;

      b.    Failing to establish and maintain a proper policy for dealing with the physical health of a prisoner;

      c.    Failing to adopt and/or implement a policy or procedure for corrections officer to follow when the infirmary unlawfully denies medical care to an inmate in need of serious medical attention;

      d.    Failing to maintain the proper procedures or policies to ensure that medical instructions to protect the health of inmates are followed by individual nurses and correction officers;

      e.    Failing to stop a custom or pattern of practice whereby inmates suffering from severe asthma or other respiratory conditions could be denied necessary nebulizer and other breathing treatments;

f.      Failing to provide medical care from proper medical professional(s) to prisoners;

g.      Failing to establish and maintain proper protocols for checking previous medical history of prisoners when making medical decisions;

h.      Failing to establish and maintain proper policies for treating persons with serious and life threatening medical conditions;

i.      Promulgating, condoning or showing indifference to improper policies or customs.

By violating DECEDENT GARLAND'S EIGHTH AMENDMENT rights, Defendants Catoe, Jones and Livingston are liable to DECEDENT GARLAND'S Estate for all injunctive and prospective relief, as well as all damages, including compensatory damages, punitive damages, and reasonable attorney's fees.

## CLAIM 3:

## PLAINTIFF'S CLAIM FOR WRONGFUL DEATH AS TO ALL DEFENDANTS

62.     Plaintiffs hereby adopt, incorporate, restate and re-allege paragraphs 1 through 61, inclusive, with regard to all causes of action.

63.     Plaintiffs have satisfied the notice requirements for suit against a government entity, through a letter to the Executive director of the TDCJ within 6 months of DECEDENT GARLAND's death.

64.     Plaintiffs bring this claim against the Defendants for wrongful death, under Chapter 71 of the Texas Civil Practices & Remedies Code.   The actions of the Individual Defendants and TCDJ, individually, collectively, and vicariously resulted in the wrongful death of DECEDENT GARLAND, and caused damages to DECEDENT GARLAND'S family.

## VIII. ATTORNEY'S FEES AND COSTS

65.     Plaintiffs are entitled to an award of attorney's fees and costs under its 42 U.S.C. § 1988.

## IX. RELIEF REQUESTED

The preceding factual statements and allegations are incorporated by reference.

For these reasons, Plaintiffs pray for judgment against Defendants, any or all of them, for the following:

i.      Compensatory damages;

ii.     Permanent Injunction and/or Declaratory Judgment;

iii.    Pre-judgment and post-judgment interest;

iv.     Attorney's fees and expenses;

v.      Punitive damages against the Individual Defendants;

vi.     Costs of Court; and

vi.     Such other and further relief as the Court deems proper.

## X.  JURY DEMAND

Plaintiffs respectfully demand trial by jury and has tendered the appropriate fee for the same.

## XI.      PRAYER

WHEREFORE, Plaintiffs respectfully request Defendants to be cited to appear and answer herein, and that upon final trial hereof, the Court award the relief against Defendants jointly and severally.

Respectfully submitted,

**OBI LAW FIRM, PLLC**

   /s/ EMMANUEL U. OBI
EMMANUEL U. OBI, ESQ.
State Bar No. 24058347

1910 Pacific Avenue, Suite 11500
Dallas, Texas 75201
Tel: 214-530-2339
Fax: 855-988-5677
Email: eobi@obilawfirm.com

**DIMITRI DUBE PC**

   /s/ DIMITRI DUBE
DIMITRI DUBE
State Bar No: 24068944

325 N. St. Paul Street, Suite 2750
Dallas, TX 75201
Fax: 214.975.2010
Tel: 469.484.5021
Email:dimitridubepc@gmail.com

**&**