**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **SANDRA PINCHBACK, ET AL.** | § § § | |
| **Plaintiffs,** | § § | **CAUSE NO. 6:15-CV-00805-RWS-KNM** |
| v. | § § | |
| **DAVID LEON-GOMEZ, ET AL.** | § § § | |
| **Defendants.** | § | |

### ORDER ADOPTING REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

The Report and Recommendation of the Magistrate Judge (Docket No. 132; "the Report"), which contains her findings, conclusions and recommendations regarding the Defendants' Motions for Summary Judgment (Docket Nos. 64 , 65 and 81),[1] has been presented for consideration. The Report recommends that Jones's and UTMB's Motions be denied and the TDCJ Defendants' Motion be granted. Jones, UTMB and Plaintiffs each filed written objections to the Report (Docket Nos. 144 (Jones), 142 (UTMB) and 145 (Plaintiffs)).[2] Having made a *de novo* review of the written objections, the Court concludes that the findings of the Magistrate Judge are correct and the objections are without merit. For the reasons stated below, the parties'

---

[1] Docket No. 64 is Defendant Kathy Marie Jones' ("Jones") Motion for Summary Judgment.

Docket No. 65 is Defendants Donald Kimbrough, Robert Clary, David Gomez-Leon, Warden Harris, and the Texas Department of Criminal Justice's (collectively, "the TDCJ Defendants") Motion for Summary Judgment.

Docket No. 81 is Defendant University of Texas Medical Branch's ("UTMB") Motion for Summary Judgment.

[2] Jones' and UTMB's Motions for Leave to File Objections to the Report and Recommendation in Excess of the Page Limit (Docket Nos. 141 and 143) are hereby **GRANTED.**

objections are **OVERRULED**, Jones's and UTMB's Motions are **DENIED** and the TDCJ Defendants' Motion is **GRANTED**.

**I.       Jones's Objections**

Jones primarily objects to the Magistrate Judge's consideration of what Jones claims is a hearsay statement (the "Clemons Statement"). The Court addresses the admissibility of the Clemons Statement before the remainder of the objections.

**a.  Admissibility of the Clemons Statement**

Plaintiffs presented a Declaration of Dennis Clemons, a fellow inmate of the decedent Garland, swearing that Garland told Clemons that a nurse named Ms. Jones "refused to see him and treat him." Docket No. 81-7 at 1. Jones previously objected to the Magistrate Judge's consideration of the Clemons Statement as hearsay, Docket No. 91 at 2, and the Magistrate Judge overruled the objection and considered the Statement. Docket No. 132 at 11 n.5.

Jones re-urges her objection to the Clemons Statement, claiming it is double hearsay not within any exception. Docket No. 144 at 3–6. Jones asserts that "Clemons's declaration states that Garland told him that Jones told him that she didn't want to see him." *Id.* at 4. Jones claims that the alleged first layer of hearsay—what Jones allegedly told Garland—is not admissible under the hearsay exception for statements of a party opponent because Clemons does not have the personal knowledge to testify about what Jones told Garland in the infirmary. *Id.* at 4–5. Jones claims the alleged second layer of hearsay—what Garland told Clemons—is hearsay that does not fall into the exceptions for excited utterances or present sense impressions because too much time passed between Garland's 5:00 p.m. visit to the clinic and his later conversation with Clemons. *Id.*

The Clemons Statement is admissible because, to the extent it is hearsay, it falls into the residual exception of Federal Rule of Evidence 807. The alleged first level of hearsay is absent

because Clemons's declaration does not purport to know what Jones told Garland, only that a person by her name "refused to see and treat him." *See* Docket No. 81-7 at 1. The alleged second level of hearsay falls into the residual exception because the statement Garland made to Clemons is inherently trustworthy. *United States v. El-Mazain*, 664 F.3d 467, 498 (5th Cir. 2011) ("[T]he 'equivalent circumstantial guarantees of trustworthiness' requirement . . . is the lodestar of the residual hearsay exception analysis.") (internal quotation omitted).

> A statement is admissible under Rule 807 when:
>
> (1) the statement has equivalent circumstances of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice.

FED. R. EVID. 807. Federal Rule of Evidence 807 also requires that reasonable notice be given to the adverse party, before the trial or hearing, in order to give the adverse party fair opportunity to meet it. Courts have interpreted the notice requirement flexibly to give the opposing party a "sufficient opportunity to determine its trustworthiness." *Hicks*, 466 F. Supp. 2d at 810 (citing *United States v. Evans*, 572 F.2d 455, 489 (5th Cir. 1978)).

The Clemons Statement is inherently trustworthy for several reasons. First, as Plaintiffs noted, Garland made his statement before any motive to fabricate could arise. Docket No.108 at 6 (citing *Harrington v. City of Redwood City*, 7 F. App'x 740, 742–3 (9th Cir. 2001)); *see also Dall. Cty. v. Commercial Union Assurance Co.*, 286 F.2d 388, 397 (5th Cir. 1961). There was no pending lawsuit, and Garland had no financial interest in telling Clemons that Jones refused to see him. Docket No.108 at 6. Further, Garland's memory was fresh as the Clemons Statement was made only four hours after the 5:00 p.m. visit. *See Hicks v. Charles Pfizer & Co.*, 466 F. Supp. 2d 799, 809 (E.D. Tex. 2005) (citing *United States v. Sinclair*, 74 F.3d 753, 758 (7th Cir. 1996)

("[I]mmediacy of knowledge is one of the key circumstances indicating trustworthiness.")). Moreover, surrounding circumstances corroborate Garland's statement to Clemons.[3] *Id.* (citing *United States v. Bell*, 367 F.3d 452, 467 n.6 (5th Cir. 2004)). Garland went to the infirmary and checked out after about ten minutes with no medical records to suggest any treatment took place. Docket No. 81-5 at 9–15; Docket No. 81-7 at 14; Docket No. 81-10 at 2–23. According to their depositions, Garland told two other people—Faulkner and Kimbrough—that the infirmary denied him treatment at the 5:00 p.m. visit. Docket No. 81-6 at 19:22–20:7; Docket No. 81-8 at 29:4–6. Faulkner further testified that it was a female that denied Garland access to the infirmary at that time.[4] Docket No. 81-6 at 20:2–5. Resolving factual disputes in favor of Plaintiffs, Jones's contrary evidence that she was not at the clinic during the 5:00 p.m. visit is insufficiently strong to outweigh the corroborating evidence. *See* Docket No. 132 at 11–12, 14.

The Clemons Statement meets the second requirement of Rule 807 because it is offered as evidence of several material facts, including Jones's subjective awareness of the risk to Garland's health, her conscious indifference to that risk and the objective unreasonableness of her actions.

The Clemons Statement meets the third requirement of Rule 807 because it is "more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable efforts." FED. R. EVID. 807. In other words, the statement is necessary. *See Hicks*, 466 F. Supp. 2d at 810–11. Although there is some other evidence that Jones was at the infirmary during Garland's 5:00 p.m. visit, the Clemons Statement is the most probative on the issue.

---

[3] Corroborating evidence may be used to support the trustworthiness of the statement because the Confrontation Clause is not implicated in this proceeding. *United States v. Bell*, 367 F.3d 452, 467 n.6 (5th Cir. 2004).

[4] Garland actually gave the name of the nurse that denied him treatment but the witness could not remember the name. Docket No. 81-6 at 20:2–5.

The Clemons Statement meets the fourth requirement of Rule 807 because admitting it will best serve the interest and purposes of the Federal Rules of Evidence. FED. R. EVID. 807. "The rules are to be applied so as to ensure 'that the truth may be ascertained and proceedings justly determined.' " *Hicks*, 466 F. Supp. 2d at 811 (citing FED. R. EVID. 102). Considering the Clemons Statement, which the Court has determined is trustworthy and is also the most probative evidence of a material fact in this case, facilitates rather than hampers the just determination of the truth.

Finally, Plaintiffs have made Jones aware of their intention to use the statement sufficiently in advance of trial "so as to obviate the dangers of prejudice and unfair surprise." *Hicks*, 466 F. Supp. 2d at 810. Accordingly, the Clemons Statement meets all the requirements of Rule 807.

The conclusion that the Clemons Statement falls into the residual exception is confirmed because the statement almost fits into two other hearsay exceptions. *United States v. Bonds*, 608 F.3d 495, 501 (9th Cir. 2010) (holding that when an allegedly hearsay statement "almost fit[s] into other hearsay exceptions, the circumstances cuts in favor of admissibility under the residual exception.") (citing *United States v. Valdez-Soto*, 31 F.3d 1467, 1470–71 (9th Cir. 1994)). First, the statement almost falls under the hearsay exception of Federal Rule of Evidence 804(b)(2) because Garland's conversation with Clemons occurred very close in time to Garland's death and concerned the circumstances under which Garland died. Second, the statement almost falls under the hearsay exception for excited utterances because of the temporal proximity of Garland and Clemons's conversation to the 5:00 p.m. visit at which Garland was allegedly refused treatment. In sum, the Clemons Statement is admissible, and Jones's objection to the Magistrate Judge considering it is without merit. Having resolved Jones's objection to the Clemons Statement, the Court proceeds to her remaining objections.

### b. Jones's Remaining Objections

In her objections, Jones advances four arguments directed to: her subjective awareness of a serious risk to Garland's health, Docket No. 144 at 7; her conscious disregard of that risk, *id.* at 8–10; her burden of proof with respect to her assertion of qualified immunity, *id.* at 10; and the reasonableness of her actions. *Id.* at 11–14. For the reasons that follow, the Court finds each argument without merit.

Jones first contends that the Report improperly applied *Easter* in determining that Jones was subjectively aware of a serious risk to Garland's health. *Id.* at 7. Jones argues that she performed peak flow tests on Garland instead of treating him as stated in the Report. *Id.* Regardless of what type of test Jones performed on Garland, the analysis in the Report remains correct. The significance of Jones "treating," "seeing" or "testing" Garland was that Jones was exposed to the documentation of Garland's history of asthma. Docket No. 132 at 10 (citing *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)). The Court agrees with the Magistrate Judge that genuine issues of material fact remain as to Jones's subjective awareness.

Second, Jones argues that the Magistrate Judge erred in her conscious disregard analysis because Jones "treated" Garland. Docket No. 144 at 8–10. Again, Jones contends that she performed peak flow tests, not breathing treatments as stated in the Report. *Id.* Regardless, the evidence shows that Jones wrote a medical pass for Garland to receive Albuterol breathing treatments in January of 2014; that Garland suffered a life-threatening asthma attack on June 10, 2014; that the infirmary prescribed breathing treatments for the following ten days; and that Jones measured Garland's peak flows on two occasions in the next ten days. Docket No. 81-1 at 13–22; Docket No. 81-3 at 28–35. This evidence creates a fact issue as to whether Jones saw Garland's medical chart while performing these peak flow tests, whether she knew Garland was receiving

breathing treatments due to a life-threatening asthma attack, and whether Jones knew the correct treatment for a life-threatening asthma attack was to issue breathing treatments.

Jones also contends that the fact that "she should have treated [Garland] with an Albuterol treatment" constitutes no more than negligence under *Zaunbrecher v. Gaudin*, 641 F. App'x 340 (5th Cir. 2010). However, the genuine issues of fact as to whether Jones was subjectively aware of the Garland's asthma and saw the doctor's note recommending that Garland be returned to medical if his condition worsened creates a genuine issue of material fact as to whether Jones knew the advice she was giving on the 10:00 p.m. phone call was incorrect. These facts are sufficient to create a genuine dispute as to whether Jones intentionally treated Garland incorrectly, which can rise to the level of deliberate indifference. *See Domino*, 239 F.3d at 756 (citing *Johnson*, 759 F.2d at 1238). The Court agrees with the Magistrate Judge's analysis of Jones's alleged deliberate indifference.

Third, Jones argues that, in light of her assertion of qualified immunity, the Magistrate Judge improperly shifted the burden by requiring Jones to present evidence that she did not see the clinic note from Garland's visit to the infirmary at 12:30 p.m. Docket No. 144 at 10. The Magistrate Judge properly found that Plaintiffs' evidence that the note was in Garland's records from the 12:30 p.m. visit creates a fact issue as to whether Jones saw the note. The Court agrees with the Magistrate Judge that Jones's alleged conscious indifference is a proper issue for the jury.

Lastly, Jones contends that her actions were reasonable for two reasons. *Id.* at 11–14. First, Jones argues that the Report's reliance on the first prong of the qualified-immunity analysis—the occurrence of a constitutional violation—to determine Jones's reasonableness is improper because there is no competent summary judgment evidence that suggests Jones was deliberately indifferent to a serious risk of harm. *Id.* at 13. However, as noted above, there is sufficient summary judgment

evidence to create a genuine issue of fact as to whether Jones's actions rose to the level of a constitutional violation.

Second, Jones maintains that there is no competent summary judgment evidence that Jones acted unreasonably. *Id.* Jones claims that Plaintiffs were required to put forward "competent summary judgment evidence that [any] licensed vocational nurse with the knowledge that Jones had at that time would not have acted in the same manner." *Id.* An official's actions are objectively reasonable if they do not violate clearly established law. *Easter*, 467 F.3d at 463. "A law is clearly established if it is sufficiently clear that a reasonable official would understand that what he [or she] is doing violated the right." *Id.* Accordingly, Plaintiffs may present evidence that Jones's actions violated clearly established law in order to create a fact issue as to whether a reasonable licensed vocational nurse with the knowledge Jones had would have acted in the same manner. *Anderson v. Creighton*, 483 U.S. 635, 639–640 (1987).[5]

The Magistrate Judge correctly found that in the relevant time period, "the law was clearly established that a prison inmate could demonstrate an Eighth Amendment violation by showing that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Easter*, 467 F.3d at 463 (quoting *Domino*, 239 F.3d at 756). As discussed above, there is sufficient evidence that a reasonable jury could find that Jones did evince a wanton disregard for Garland's serious medical needs. Accordingly, there is genuine issue of fact as to the reasonableness of Jones's actions.

---

[5] Jones cites other authority that defines reasonableness, but those cases do not differ from the Supreme Court's definition in *Anderson*.

**II.     UTMB's Objections**

UTMB objects that a plaintiff cannot recover under an Americans with Disabilities Act ("ADA") or Rehabilitation Act ("RA") claim without a showing of intentional discrimination. Docket No. 142 at 1–6 (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533–34 (1999)). Under the ADA and RA, a plaintiff must allege: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014) (citing *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011)). The Report concluded that a denial of a reasonable accommodation satisfied the second two prongs of this analysis. Docket No. 132 at 29. The Court agrees that a failure to reasonably accommodate (prong (2)) may imply intentional discrimination (prong (3)). *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2015).

First, UTMB challenges the Report's use of the *Bennett-Nelson* case because the issue in that case was not causation, as it is here, but rather of waiver of sovereign immunity.[6] Although the Fifth Circuit directly addressed sovereign immunity in *Bennett-Nelson*, the Court compared the causation standards under the ADA and RA in holding that waiver of sovereign immunity under the RA moots the question of whether Congress abrogated sovereign immunity in the ADA. *Bennett-Nelson*, 431 F.3d at 454–55. Conducting that comparison, the Fifth Circuit cited other

---

[6] Plaintiffs produced *Bennett-Nelson* as support for their reasonable accommodation theory. Defendants never challenged the use of the case before the Magistrate Judge. As such, this Court does not need to consider the argument that *Bennett-Nelson*'s procedural posture makes it inapplicable here. *Hull v. Ocwen Loan Servicing, LLC*, 2013 WL 3089050, at *1 (N.D. Tex. June 19, 2013) (citing *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994); *Paterson-Leitch Co., Inc v. Mass. Mun. Wholesale Elec., Inc.*, 840 F.2d 985, 990–91 (1st Cir. 1988)). The Court nonetheless entertains the argument and finds it without merit.

Fifth Circuit cases holding that a claim for reasonable accommodation satisfies the second two prongs: "Where a defendant fails to meet this affirmative obligation [to make reasonable accommodations], the cause of that failure is irrelevant." *Id.* The Fifth Circuit further held that "[i]n lieu of such an inquiry, the court must determine whether the requested accommodation was 'reasonable' . . . ." *Id.* at 455 n.12 (citing *School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 288 n.17 (1987)). If an accommodation is reasonable, it is required, and a defendant is liable simply by denying it. *Id.* at 455.

In addition to *Bennett-Nelson*, other cases in this Circuit support the conclusion that the second two prongs are satisfied by claiming a failure to reasonably accommodate. *See, e.g.*, *Garrett*, 560 F. App'x at 382[7]; *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669 (5th Cir. 2004); *Wright v. Tex. Dep't of Criminal Justice*, 2013 WL 6578994 (N.D. Tex. Dec. 16, 2013) (citing various cases) (holding that intentional discrimination is still necessary under a reasonable accommodation theory, but allegations surrounding the failure to reasonably accommodate were enough to plausibly suggest intentional discrimination, and denying a motion to dismiss under Rule 12(b)(6)). For example in *Garrett*, the court held that the ADA and RA impose an "obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners." *Id.* (citing *Tennessee v. Lane*, 541 U.S. 509, 531 (2004); *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998)). The Fifth Circuit further held that " '[a] public entity's failure to take reasonable measures to remove [barriers] to accessibility,' i.e. satisfy the 'reasonable modification requirement,' may constitute a denial of services and discrimination sufficient to

---

[7] Plaintiffs argued that the second two prongs of the ADA analysis are satisfied with a claim of reasonable accommodation. Docket No. 81 at 39 (citing *Garrett*). UTMB never addressed *Garrett* and have simply maintained that Plaintiffs must prove intentional discrimination to recover under the ADA or RA.

satisfy the second two prongs of the Title II inquiry." *Id.* (citing *Lane*, 541 U.S. at 531).[8] As such, Plaintiffs must prove intentional discrimination under their theory of reasonable accommodation, but their evidence regarding failure to reasonably accommodate is sufficient to survive a motion for summary judgment.

Second, UTMB objects that under the ADA and RA, Plaintiffs do not adequately state a claim for failure to reasonably accommodate by asserting that UTMB failed to attend to the medical needs of a disabled prisoner. Docket No. 142 at 12–14 (citing *Rodriguez v. Muzyka*, 543 F. App'x 363 (5th Cir. 2013); *Cheek v. Nueces Cty. Tex.*, 2013 WL 4017132, at *18 (S.D. Tex. Aug. 5, 2013)). UTMB is incorrect because there may be sufficient evidence for a claim of reasonable accommodation when an inmate was denied access to medical care or given insufficient medical care. *See O'Neil v. Tex. Dep't of Criminal Justice*, 804 F. Supp. 2d 532, 538 (N.D. Tex. 2011) (upholding a claim for reasonable accommodation where the inmate was denied access to mediate, not provided follow-up appointments, and was only seen by a nurse instead of a doctor after complaining about his medication); *but see Nottingham v. Richardson*, 499 F. App'x 368 (5th Cir. 2012) (dismissing a claim for disability-based discrimination under the ADA because the claim was for failure to attend to medical needs and not tied to the alleged disability). The Court agrees with the Report that Plaintiffs' claims are similar to the claims in *O'Neil* because there is a nexus between Garland's disability, asthma, and the alleged discrimination. Accordingly, UTMB's objection is without merit.

---

[8] The Fifth Circuit treats the phrases "reasonable accommodation" and "reasonable modification" interchangeably. *Garrett*, 560 F. App'x at 382.

Third, UTMB contends that it made reasonable accommodations and that the Report used the wrong standard for a Title II case.[9] Under the Title II standard laid out in *Alexander v. Choate*, 469 U.S. 287, 301 (1985), UTMB failed to make reasonable accommodations. Under *Alexander*, an accommodation is reasonable when it provides "meaningful access to the benefit." 469 U.S. at 301. The Court adopts the Report's thorough analysis regarding why, in the period from June 10 to June 22, 2014 and on the day of June 23, 2014, UTMB knew what reasonable accommodations Garland needed. *See* Docket No. 132 at 33–36 (citing *O'Neil*, 804 F. Supp. 2d at 538). Moreover, because reasonable accommodations are the mechanism by which disabled inmates get meaningful access to benefits under the ADA and RA, the Report's analysis regarding reasonable accommodations applies with equal force whether Garland had meaningful access to medical care during the relevant time periods. Genuine issues of fact remain as to whether UTMB provided Garland reasonable accommodations and whether Garland had meaningful access to medical care in June, 2014.

Finally, UTMB argues that it is entitled to sovereign immunity under the ADA because Congress did not validly abrogate its immunity. Docket No. 142 at 14–16. UTMB asserts that while the RA and ADA are similar, they differ in their causation requirements. Accordingly, they argue that the ADA needs to validly abrogate sovereign immunity under the three-part test established in the *United States v. Georgia*. *Id.* (citing *Hale*, 642 F.3d at 497–98). The Fifth Circuit has held that the rights and remedies are identical in the ADA and RA and the statutes only differ in their causation requirements. *Bennett-Nelson*, 431 F.3d at 453–455; *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 288–89 (5th Cir. 2005); *see also McCoy v. Tex. Dep't of Criminal Justice*, 2006

---

[9] UTMB is incorrect that the Report cites the standard for a Title I case based on employment. *Bennett-Nelson* is a Title II case brought by two hearing-impaired students alleging that they were denied equal access to education.

U.S. Dist. LEXIS 55403, at *11–16 (S.D. Tex. Aug. 9, 2006). However, in cases involving claims for failure to reasonably accommodate, the cause of the failure is irrelevant, and the ADA and RA are "identical in scope." *Id.* Therefore, abrogation of immunity under the ADA is moot. *Id.*

Although the Fifth Circuit has held that, in reasonable accommodation claims, the waiver of immunity in the RA renders discussion of immunity in the ADA unnecessary, the Court nonetheless finds abrogation of immunity under the ADA claim. *See Bennett-Nelson*, 431 F.3d at 454–55; *Pace*, 403 F.3d at 288–89. UTMB admits that if the state's conduct violates both the ADA and the Fourteenth Amendment, then the ADA validly abrogates sovereign immunity. Docket No. 142 at 15 (citing *Hale*, 642 F.3d at 497–98). The Eighth Amendment is extended to the states by the Fourteenth Amendment. *Id.* (citing *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983)). Here, there is sufficient summary judgment evidence to create genuine issues of fact as to whether Jones, an employee of UTMB, violated the Eighth Amendment and whether UTMB violated the ADA by failing to reasonably accommodate Garland. Therefore, the ADA validly abrogates UTMB's sovereign immunity in this case.

### III. Plaintiffs' Objections

Plaintiffs object generally to the recommendation that the TDCJ Defendants' Motion for Summary Judgment be granted, and they incorporate their Response and Sur-Reply to the Motions for Summary Judgment into their objections. Docket No. 145 at 2. Plaintiffs specifically object to the Report's findings and recommendations with respect to Defendants Officer Robert Clary and TDCJ. *See generally id.* The Court addresses Plaintiffs' specific objections as to Clary and TDCJ and adopts the Report's thorough analysis as to Defendants Kimbrough, Gomez-Leon, and Harris.

### a. Clary

Plaintiffs argue that the Report misapplies the deliberate indifference standard to the facts of the case. *Id.* at 3. Plaintiffs contend that Clary's actions in obtaining Garland's badge and calling down to the medical department do not preclude his liability for two reasons: (1) Plaintiffs maintain that the case law does not support this contention; and (2) after the telephone call, Plaintiffs assert that Clary ignored inmates' requests to allow Garland to go to medical. *Id.* at 5.

Plaintiffs argue that finding that a guard took an affirmative step to help an inmate in distress is not sufficient to find that the guard did not consciously disregard a serious risk to the inmate's health. *Id.* Plaintiffs argue that even if medical care is ultimately provided, a delay in medical care can constitute conscious disregard. *Id.* Applying the conscious disregard standard to this case, Plantiffs argue that Clary must not only have taken an affirmative step, the step must also have been timely. *Id.*

Plaintiffs make two errors in this argument. First, Clary did not delay in acting to help Garland. Within the first thirty minutes of his shift, Clary took affirmative action to get Garland medical help. Docket No. 65-3; Docket No. 65-4; Docket No. 81-6. Clary's action was not delayed or late but happened quickly after Clary began his shift. *Id.* After Clary took the affirmative step of contacting medical, he properly relied on the medical advice of Jones that Garland needed to use his rescue inhaler instead of going to medical. *See* Docket No. 132 at 21–22 (citing *Estes v. Rahorst*, 2013 WL 5422874, at *6 (N.D. Tex. Sep. 27, 2013)).

Second, Plaintiffs argue that Clary's actions in racking up the inmates rather than attending to Garland despite loud protests from Garland's fellow inmates constituted deliberate indifference. Docket No. 145. The Court is not persuaded. Considering all the events from the time Clary started his shift, the Magistrate Judge was correct in her recommendation that Clary did not act

with a conscious disregard. The Report contains a thorough summary of the events that transpired.[10]

The timeline of events supports the conclusion that Clary did not display conscious disregard. At or around 10:00 p.m., Clary obtained Garland's medical badge and gave it to Gomez-Leon, who contacted medical. Clary began racking up inmates after he gave Garland's badge to Gomez-Leon to contact medical. Once Gomez-Leon heard the results of the 10:00 p.m. telephone call, he informed both Clary and Garland of the advice from the infirmary: that Garland should use his inhaler and that medical did not want to see him. Only a few minutes after Gomez-Leon relayed that information to Clary and Garland, Garland collapsed.

When Clary initially arrived at work, he did not delay in seeking medical help for Garland. Clary did not delay Garland's medical care in racking up the inmates because he was waiting to hear from medical. After hearing from medical, Clary relied on the advice of medical professionals that Garland only needed his inhaler. Garland collapsed within minutes of that telephone call. The Court agrees with the Magistrate Judge that these facts do not demonstrate conscious disregard.

---

[10] Plaintiffs claim that the Report never addressed the fact that Clary ignored protests by the inmates that Garland's condition was worsening and instead continued to rack up the inmates, starting with rows one and two as opposed to row three, which was Garland's row. Docket No. 145 at 3. However, the Report did consider that Clary put inmates in their cells despite pleas form Garland and his fellow inmates. Docket No. 132 at 21. Plaintiffs are correct that the Report does not specifically mention which row Clary started with, but Plaintiffs do not explain how Clary beginning with Garland's row would have prevented delay in Garland's medical treatment. *See generally* Docket No. 146. To the contrary, Defendants provided evidence that Clary did not put Garland in his cell for the night and instead left Garland out of his cell to see if he could get him more help. Accordingly, which row Clary started with was not material to the analysis. Docket No. 65-3 at 53:1–3. Plaintiffs additionally contend that the Report did not account for the fact that the inmates' pleas to Clary came after his call to medical. Docket No. 145 at 5. However, the Report did address that Clary began putting inmates in their cells for the evening and that complaints came to Clary "[s]ometime after giving Garland's identification card to Gomez-Leon." Docket No. 132 at 21.

### b. TDCJ

First, Plaintiffs request that, if the Court reinstates the Eighth Amendment claims against any of the TDCJ employees, the Court also reinstate the claims for violation of the ADA and RA. Docket No. 145 at 6. Because the Court does not reinstate the claims against any TDCJ employee, Plaintiffs' request is moot.

Second, Plaintiffs argue that TDCJ is liable under the ADA and RA for the actions of Jones because the Magistrate Judge allegedly erred in insufficiently crediting Plaintiffs' argument that their Third Amended Complaint sought to hold TDCJ liable for Jones's action. *Id.*; *see also* Docket No. 45 at 7; Docket No. 132 at 32 n.22. Plaintiffs state that "the Magistrate Judge found this theory was first advanced in Plaintiff's Advisory," then proceed to argue that "[t]his is incorrect as paragraphs 85–88 in Plaintiffs' Third Amended Complaint makes clear that Plaintiffs sought to hold TDCJ liable for Ms. Jones' actions." Docket No. 45 at 7. Even assuming Plaintiffs properly sought to hold TDCJ liable for Jones's actions, Plaintiffs fail to address the other deficiencies identified by the Report. Docket No. 132 at 32 n.22. The Court agrees with the Magistrate Judge that this argument is unavailing.

### IV. Conclusion

Having made a *de novo* review of the objected-to portions of the Report, the Court concludes that the findings of the Magistrate Judge are correct and the objections are without merit. It is therefore

**ORDERED** that the parties' Objections (Docket Nos. 142, 144 and 145) are **OVERRULED**, and the Report's findings of fact and conclusions of law are **ADOPTED** as those of the Court. It is further

**ORDERED** that Defendants Jones' and University of Texas Medical Branch's Motions for Summary Judgment (Docket Nos. 64 and 81) are **DENIED**. It is further

Page **16** of **17**

**ORDERED** that the TDCJ Defendants' Motion for Summary Judgment (Docket No. 65) is **GRANTED**. Accordingly, it is

**ORDERED** that Plaintiffs' claims against the TDCJ Defendants are **DISMISSED WITH PREJUDICE**. All relief not previously granted as between Plaintiffs and the TDCJ Defendants is hereby denied. The parties shall bear their own costs.

**So ORDERED and SIGNED this 22nd day of March, 2017.**

*[Signature: Robert W Schroeder III]*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE